We'll hear argument next in Case 15-7, Universal Health Services v. United States and Massachusetts, XREL, Escobar, and Correa. Mr. Englert. Englert, Thank you, Mr. Chief Justice, and may it please the Court. This entire case turns on four words of the statute, false or fraudulent claim. False and fraudulent have been unchanged since 1863 in this statute. Claim is defined by statute. I'll come back to those words. Three separate State agencies investigated the facts of this case in detail. All three agencies produced lengthy reports and proposed remedial measures for certain alleged regulatory violations. No agency asked for any money back. No sanction at all was imposed on the company. One individual was fined $1,000, and the clinic director was given two years of supervision. Through the magic of the implied certification theory under the False Claims Act, the very same facts have now been recharacterized as fraud on the government. The First Circuit focused on a single alleged regulatory violation involving a regulation not cited in the complaint, not cited in the appellate brief, not cited in the amicus brief of the Commonwealth of Massachusetts. That is not what fraud means. Now, coming back to the four words that matter, false or fraudulent claim. False means false. This Court construed that word in Williams v. United States. Footnote 13 of Respondent's brief unsuccessfully tries to distinguish Williams. The Solicitor General ignores Williams. Ginsburg. It can't mean misleading, can it? A false can only mean false. It can't mean deceptive, misleading. It cannot, Justice Ginsburg, because the body of law that covers deceptive and misleading statements is not falsity, it's the law of fraud. And the law of fraud is stated in Section 551 of the Restatement, second of torts. I suppose you have a private contract. In the private contract, it's for medical services. The written part does not actually use the word doctor, but the circumstances are such that any reasonable person would assume, would believe, that the parties contracted for medical services provided by a doctor. This is an ordinary contract case. Could not a jury or the judge find that that implicit term of the contract, that the services would be provided by a doctor, was breached? It was a material breach, and therefore the implicit statement was false. Two responses, if I may, Justice Breyer. First, the whole problem here is the tortification of contract. Yes, that's a good contract case, but it's not automatically a good tort case. The second answer is that Section 551.2e of the Restatement deals with that exact situation, facts basic to the transaction. So the common law has developed a meaning of fraud that will accommodate the cases in which liability makes sense because every reasonable person, as Your Honor said, would assume something to be true. Comment J and K and illustrations 3, 4, 5, and 6 of the Restatement, rather 3, 4, 5, 6, 7, and 8, give one example of facts basic to the transaction and five examples of facts not basic to the transaction. It is a very, very, very narrow duty of disclosure. Oh, well, fine. But now let's go a step further. We have our contract. The facts are such that any reasonable person would assume there is an implicit statement that the services will be provided by a doctor. You say that could be a breach of contract. Now it turns out that this company that has that contract is also sold the shares over the SEC. And the SEC says, you know, it's so obvious that that implicit statement in the contract meant that they had a doctor who was a doctor. That's so obvious that we think in selling shares in this company where, indeed, this contract was absolutely critical, millions of dollars was at stake, without a doctor violating the implicit statement that there was a doctor, we think that's fraud under Rule 10b-5.  All right. The SEC has a habit of construing fraud under 10b-5 broadly, and this Court has a habit of reining the SEC in. And the Chiarella case is quite key here. And Chiarella is not cited in Respondent's brief. It's not cited in the government's brief. In all the dark green amicus briefs, it's cited once, and the citation is to the dissent. Chiarella says fraud in a statute is very broad, but it's broad enough to cover the common law and no more. If Congress wants to go broader than the common law? Well, what isn't? I'm talking the common law. All I know about contracts came from Blackjack Dawson, my contract teacher, who was a great teacher. And he taught the common law. So I don't know anything else. I've, well, I won't go quite that far. But nonetheless, nonetheless, I think under common law, you could say that that was a material breach of contract, what I just talked to. And indeed, there happened to be a whole set of regulations on the shelf, et cetera, which spell it all out, to which there was an implicit reference in the contract if it's not. You understand what I'm saying? It's common law that I'm saying. Well, the thousands of pages of regulations and the implicit reference in the contract are not what the common law means by fraud. They are, sadly, what the lower courts have meant by fraud under the false claims law. Kagan. I guess I don't understand that. I mean, let me take Justice Breyer's hypothetical and make it even simpler. Let's say that there's a contract and there's an explicit term, and it says, I commit to providing a doctor's care, yes? And then it turns out that the medical care that was provided was not by a doctor. It was by a nurse or it was by somebody with not even that set of qualifications. And then the person who enters into the contract makes a statement, demands payment, and says the care was provided. Now, some care was provided, it is true, but medical care, a doctor's care, was not provided. Now, by withholding that fact and by just saying the care was provided, have I not committed fraud under the common law? No, Your Honor. Justice Kagan, that is not fraud. And that situation is actually dealt with by Restatement Section 551.2b and by the famous Junius decision written by Justice Cardozo for the New York Court of Appeals. Kennedy, what about Restatements, I think it's 529, which says a statement is fraudulent if the maker knows or believes that it's misleading because of its failure to meet or failure to add an additional statement to make it true? That's the same principle Justice Kennedy stated. And I don't see why that isn't completely applicable to what the hypothetical that Justice Kagan just gave. There's an affair to make an additional or qualifying matter in order to make that statement not false. It's exactly the Justice's hypothetical. Justice Kennedy, if I understood Justice Kagan's hypothetical question correctly, it is not fraud within the meaning of 551.2b, but let's suppose that I'm wrong about that, okay? Let's suppose that that is fraud. That's still a very far cry from the facts of this case in which the court of appeals had to invoke a regulation that cross-referenced another regulation that nobody had cited and said the failure to announce a violation of that violation when submitting a claim is fraud. All right. Breyer, I see that. That's to me what's at the heart of this. How do you distinguish those regulations, breach of which are fraudulent when you breach them and implicit promise not to, from those that are not? There are millions of regulations. That's what all the amici are worried about. But now this is my basic question, and it is a question. The obvious kind of distinction that would seem possible is a contract-based distinction between matters that are material, where the whole contract disappears, and matters that are sometimes, I think, called nonmaterial, I get the exact word, partial, where even though the condition is violated, you don't destroy the contract, but you might get damages for that. Now, that's a distinction that every court that deals with contracts is used to applying on a so-called bread-and-butter, all right, normal daily basis. Why not use that same distinction right here? Because this is not a contract case. The government has all the rights. No, no, well, you'd say, of course, it applies where the condition that was lied about was material, and there can be implicit lies. Of course there has to be an implicit lie. It could be an implicit lie that I did not comply. You might implicitly imply that you fulfilled provision number 43876B, which says paper should be 3 inches long, okay? Okay. Or there could be an implicit lie that that person in your hospital was a doctor. The first, you'd say, is not material. The second is material. Now, that I'm asking because I wonder if a distinction like that drawn from contract law would or would not satisfy most of the concerns that are raised in the amicus briefs supporting you. Justice Breyer, it would not satisfy most of those concerns for several reasons. First and foremost, the False Claims Act has its own definition of materiality, which is greatly watered down from the common law. Something that is capable of influencing a decisionmaker is material under the False Claims Act. So materiality doesn't solve the problem. But let me say also that materiality is, at least arguably, a different element. When I say at least arguably, the statute actually doesn't say under A1A that it has to be material, but courts have properly read materiality in. But even if materiality is read in, it's a different element on top of a false or fraudulent claim. And I really want to bring this Court back with respect to the four words, false or fraudulent claim, because for it to be fraudulent, there must be, as Your Honor said, an implicit lie. And the common law, cases like Junius, restatements like 551.2b, deal with the implicit lie. Sotomayor, I'm sorry, I'm totally confused.  I did what I agreed to do. Pay me, please. That's, to me, what sort of understood. If I hired you to provide me with doctor's services, you asked me for money. I'm assuming you provided me with doctor's services, and you know you didn't. Why isn't that a fraud? Because it's a contract breach. Breaking a promise is a contract breach. Some contract breaches are fraud. Most are contract breaches. Sotomayor, it depends on the facts of the case. Sotomayor, what more facts do you need? Government contracted for guns. All of a sudden you deliver guns that don't shoot. Those are the facts that led to this act. The additional facts I need are what was stated in the claim, what was stated in the regs, what were the reasonable understandings of the contracting parties. And I'm not making these factors up. Sotomayor, do you think that anybody, except yourself, would ever think that it wasn't a fraud to provide guns that don't shoot? If that's what the government contracted for. Whether they made it — Yes, depending on additional facts, Justice Sotomayor, as stated in section 551 of the restatement. If I'm wrong about these hypothetical examples, I'm wrong. But I'm happy to rest on section 551 of the restatement as to what fraud means. Chiarella says, as a holding of this Court, that the word fraudulent requires that there be a duty. The restatement, 551.2, is all about when there is and there isn't a duty. If we don't understand, I understand. Kennedy, your earlier argument said, was your point that materiality has its own definition under the Federal contracting statutes, and it's so broad that we can't use it? So we'll just forget about materiality? Is that what I understand? No, no, Mr. Kennedy, if I may. It's my misunderstanding. The False Claims Act was amended a few years ago, about 20, about 30 years ago, to redefine materiality. I may be wrong on the timing, but it's been amended to redefine materiality as a very, very low standard. But the point is not use it or don't use it. The point is that before you get to materiality, you have to have a false or fraudulent claim. Materiality is not part of the definition of false or fraudulent. It is an additional requirement beyond a false or fraudulent claim. Kennedy, but that's what I have a hard time understanding. It seems to me we just can't think about fraud unless we have materiality in some sense, and it could be a very strict standard of materiality. Otherwise, it seems to me fraud doesn't make much sense. Justice Kennedy, I agree with you. For something to be fraud, it must be fraud as defined by the common law, and it must be material. That's this Court's holding in the Nader case. So, yes, I agree with you that to think about fraud, one must have the kind of statement that is fraudulent and materiality and santer. So what I understood you to be saying, Mr. Englert, was that all these common examples, examples that really led to the False Claims Act, are not fraud. So, Justice Kagan, that's not what I'm saying. Well, let me just give you a few of them. Justice Sotomayor said the government contracts to buy guns, the guns don't shoot. The government contracts to buy boots. This was all within the context of the Civil War. The boots fell apart after 12 hours. The government contracts to buy food, the food was rancid. And each of those contractors would come in and would demand payment. And the entire idea behind this statute is that in that demand of payment is a representation. The representation is that I've given you guns that shoot and boots that wear and food that can be eaten. And when that is not true, that is a fraudulent claim. And you're suggesting that all these hypotheticals, that somehow that's not a fraudulent claim. And I guess that leaves me sort of wondering, what do you think would be a fraudulent claim? Two things, Justice Kagan, in response. One, those may all be fraudulent claims. I'm not denying that any of those can be fraudulent claims. And again, Sections 551.2b and e of the restatement cover those. Well, if those are fraudulent claims, I would think that this is the exact same, is that the contract was for a doctor's medical care and a doctor's medical care was not provided. A non-doctor's care was provided. May I explain my key disagreement with that analysis? In your question, Justice Kagan, you embedded the proposition that there are implicit representations in the claims. That was not how the False Claims Act was read from 1863 to 1994. The Abtec case decided by the Court of Federal Claims in 1994 was the very first case after 131 years under the statute to use the implied certification theory. This concept that's easy to read back, to graft back onto the Civil War statute, that there was an implied certification, is not how people were speaking at the time of the Civil War. It is a new concept. It's something that has been causing the False Claims Act to expand dramatically in the last 22 years. But it is not — there's nothing at all. Nobody relies on the 1863 legislative. They rely on the 1966 subsequent legislative. Kagan. Kagan. Kagan. You're saying that in representing that you have satisfied the terms of the contract, you are — or let me say that — I'll start it over. In demanding payment for having satisfied the contract, you are not representing that you are — that you have satisfied the contract. That's your point? In demanding payment for satisfaction of the contract, you are not making a representation that you have satisfied the contract. Not that broadly. Not every jot and tittle of the contract. And there's a policy reason why that's a good rule of thumb. Kagan. I'm not into every jot and tittle. I'm into material portions of the contract, that, you know, that the guns shoot, that the boots can be worn, that the food can be eaten, that the doctor's care is a doctor's care. That is what the restatement refers to as essentiality, which is a much, much, much higher standard than materiality. And this is where the problem comes in. When essentiality, which does go to the heart of an implicit representation, arguably, is confused with materiality, we have the problems reflected in the light green amicus briefs in this case. Now, the government's and Respondent's main argument, as I see it, is really not even a textual argument. It is that men must turn square corners when they deal with the government. That's a perfectly fine principle in certain settings, but not when a punitive statute is at issue. When punishment is at issue, the relevant principles are instead the principle of constitutional avoidance and fair notice and the rule of lenity. And both of those principles cut very strongly against the implied certification theory. Twenty-seven years ago, this Court considered a case of excessive punishment under the False Claims Act called United States v. Halpern. It was later overruled in just 8 years, but it remains instructive. The judicial instinct to avoid excessive punishments was so strong that the Court let the appellee out of FCA civil liability by invoking the Double Jeopardy Clause. When the Court overruled Halpern, it suggested in passing that the Eighth Amendment might be better suited than the Fifth to address constitutional excessiveness concerns. But the recognition by this Court that punishment under the False Act as draconian is of longstanding, and that insight to what's Breyer. Breyer, how do you want us to write this? You're in an area where billions of dollars are at issue. This is going on a long time. I don't want to write something that's going to upset everybody's expectations in the contract area. On the other hand, the common sense of it, and you just said the words, you said, well, if in fact you send in a form which says, certainly, give me money for supplying the guns or the medical care, something is implied, and you use the word essential to describe that. And then I also know that if the agency wants to, it could put a little statement at the bottom saying, I hereby certify I complied with every regulation. And I guess if they did that, then even you would not have an objection. The saying, your failure to do it while signing it, was broad. So what do you mind doing from your point of view? This word essential, whatever that may mean, which I'll look up, how does it work? What's the correct standard in your view? Here's how it writes. False means false. Fraud means fraud. Everybody agrees with that. Okay. Fraud means fraud, as reflected in the restatement. And here's how it writes from a policy dimension, Justice Breyer. The government holds all the keys here. It can change the claim form. It can change the contract. It can go after people for contract violations using the law of contracts and the law of government contracts, which is very specialized. It can go after people for debarment. It can go after people for money. It can go after people for restitution. The government holds all the keys, and, indeed, the government, frankly, should hold all the keys. Breyer, you have lots of good arguments, and I'm not, I'm asking for advice from you, from your point of view, what the sentence in the opinion should say that describes the circumstances under which the person who submits a form saying, I want $1,000, I just supplied the guns or the medical care, when that person, and by the way, there are regs say they have to fire, and there's a reg say it has to be a real doctor. When has that person committed fraud? Or that's what I want. What is the sentence you want me to write? C, restatement second of sorts, section 551.2b and e, and comments j and k in illustrations 3 through 8. That's the sentence. 551.2b and e, comments j and k, illustrations 3 through 8. I'd like to reserve the balance of my time. Roberts. Thank you, counsel. Mr. Frederick. Thank you, Mr. Chief Justice, and may it please the Court. When a claimant asserts a right to government funds without disclosing that it has knowingly violated the government's material payment conditions, that claim is both false and fraudulent, regardless of whether it contains and express false statements. Mr. Frederick, this case confuses me to no end. I don't know why the lower court relied on the section 423, the director's qualifications and responsibilities, when there's a direct regulation that says that the health service will only pay for services rendered by a staff member who's qualified. Why did they go off on this indirect method of analyzing this case? I think the original sin here, if I can express it that way, Justice Sotomayor, was by the district court, which was so focused on what were conditions of participation, it used a formulation of conditions of participation versus conditions of payment. And once it constructed that ideological dichotomy, it was so focused on what the conditions of participation were that it lost sight of the fact that these regulations all work together, and in a way to the point where it's not just a matter of whether it's qualified or not. Sotomayor, had I been fortunate enough to litigate the case in the district court, we might have cited that provision. But I would point out that the key point here, and I don't think the other side disputes this, is that when you're providing mental health care to teenagers and other children, it should be supervised and it should be given by people who have the proper license. I don't think that it takes any great leap of essentiality or materiality or intrinsicness or whatever words the Petitioner wants to come up with. That's pretty basic. And the violation that occurred here was one that is all over the mass health regulations. You can look at it in the supervisor, the clinical director's requirements to maintain overall supervision, which is what the First Circuit relied on. If you looked at the express payment condition, which is .441a, it expressly links to .424, which lays out all the qualifications of the nurses and the social workers and the psychologists. Robertson, is your position that every material breach of a contract gives rise to a false claim act, a claim under the False Claims Act as false and fraudulent? No. Our position is that there are two other requirements in the act. One is that they be done knowingly, and under the statute, the definition of knowing has three features, with knowledge, deliberate indifference, or reckless disregard. So there is a knowledge requirement that has to be done, and I would point out, Justice Breyer, that actually solves virtually every problem in the Petitioner's amici, because they are talking about situations in which they are not focusing on the knowledge requirement of the fraudster who is seeking to get a government policy. Robertson, I know you've got another one, and I want to keep that in mind, but if it's a situation where the alleged material breach is of Massachusetts Regulation 185Z34810 or whatever, you the claimant would have to show knowledge of that regulation? Knowledge that when it was breaching it, it was going to be material to the government. That's the second part of what I think is important.  Well, I guess, I mean, that causes concern, of course, because there are thousands of pages of regulations under Medicaid or Medicare programs, and I guess your position would precipitate litigation over whether or not the person who said, here's our bill, knew about new, under the reckless whatever standard, about the particular regulation that the government or the relator is claiming made the legislation submission fraudulent. The core test, Mr. Chief Justice, is whether the State could reject the claim for reimbursement, whether it had a basis in rejecting it because it was a material claim. Well, but I thought you said that. Material violation. So if it was a material violation and the government had a basis for rejecting the claimant saying, your services do not cover reimbursement, it becomes a fraudulent or false claim if the claimant omits telling the government that there was something material. Well, but I thought your point was the first thing is that the claimant has to know about it. That's correct. It has to know about the particular requirement in the regulation. That's correct. And it has to know that it was important to the government, it was a material condition for the government, that the government could reject payment on this basis. It has to know not only about the particular provision, but that it was material and the government wouldn't pay without it. That's correct. And that's why, Justice Kennedy, to go back to your question, the key restatement provision here is not 551, it's 529, which we've cited in our brief at page 29, and which essentially is not discussed in the opening presentation. Breyer, looking at what you just said, you said the three conditions are where it's not written on the form. The submitter has to know about it. Second, he has to have been material. Correct. And third, he has to omit telling the government about it. That's right. Okay. Now, I look at the two things he talked about in the restatement, and he says, matter is known to him that he knows to be necessary to prevent his partial or ambiguous statement from being misleading. Boy, that's pretty close to what you said. And then E is facts basic to the transaction, if he knows the other is about to do it under a mistake. What's the difference between – I mean, I know the people who are experts in this will tell me there's huge differences, but what's the difference between what you just said and what he said? Well, I think that the difference is that I think there's an easier restatement provision that's more directly on point. And if I could just quote from our brief at page 28 to 29, we quote the restatement section 529, quote, "...a representation stating the truth so far as it goes, but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent representation." But it's got to be – he has to know about the specific provision in the regulation. That's correct. That's correct. But here, Mr. Chief Justice, I think that it would be odd to suppose that in what is a massive program involving, you know, billions of dollars, where their business model is predicated on serving indigent people so that they can get access to Medicaid reimbursed funds, that they would read the regulations and a number of them say it is critical to provide supervision when you're providing mental health care. Okay. So you think it's an easy case to prove. In other words, because they would have necessarily known that. But what they have to know is of that regulation, whatever one of the 28 it is, and they have to know that the government will regard that as material. That's correct. But the key point here, Mr. Chief Justice, is I don't think that that should be a difficult case. Now, the other side spends a lot of time talking about worthless services, and they are so worthless or the services are so worthless that it would be rather obvious. And I would point out that if the worthless services are recoverable under the False Claims Act, then it is okay to have an implied certification theory. They have essentially conceded that if the goods are completely worthless, it would be okay for the government to bring a False Claims Act case. Now, I would submit that if the goods are partially worthless, if those have also to be recoverable, because there's no clear way to draw a line between those that are partially worthless and those that are completely worthless. Let me give you a simple example. Here, under what I understand Petitioner's theory to be, if Petitioner had gotten some college interns who were studying psychology, and it decided to allow those interns to practice in their medical facilities, and those college interns gave what was called therapy to teenagers, under their theory, they don't have to tell the government that these are college interns who don't have college degrees or certifications or licenses required by the State, and it is a-okay to charge the government full freight, not only for the service, but under .408, they're also charging with the representation that they have embedded in a supervision cost. I suspect most cases are a little more complicated than that, and that's where the difficulty comes in when you have hundreds, thousands of pages of regulations and typically not, probably not the government. They didn't in this case, they didn't pick up the false claim, it was the relator, and the relator comes in and says, well, you didn't violate, you violated the provision, not that the college intern is a doctor, but that whatever it is, you know, you have to use this particular, I don't know, syringes or drug company, and in fact, you didn't, and therefore, blah, blah, blah. And I guess that's where the problem comes in, in that it's a little more complicated than that, and I just don't know if I can take your abstract hypothetical and transfer it to the reality of government contract. Frederick, let me go at the core of what I think the concern is in your statement and in the position by the amici on the other side, and it's that we don't have enough of a notice. We don't know what's really important to the government. That's their basic problem, right? Now, they don't solve that problem under either of the two theories that they present in their case. If notice is the problem, the government could solve that by having the checkoff box, I think, Justice Breyer, you were the one who mentioned this, that says I certify I've complied with all the regulations. Well, that doesn't give them any notice, and it doesn't give them any notice if attached to the contract claim form, the Federal Acquisition Regulations or the Department of Defense Regulations or the HHS Regulations are copied. We would just be killing forests in order to generate that. That doesn't give them any more notice either, Mr. Chief Justice. It's a real question. Roberts, it changes the reality. They're going to look at that and they're going to say, wow, every single thing we're going to get in trouble in a False Claims Act. So our bid is going to be a little bit higher to cover that potential risk. These are not bid-ask situations by and large, Mr. Chief Justice. These are in the health care area under entitlement programs in which the government is setting the rate and in which the person is saying I'm providing service in compliance with the Federal statutes and the regulations, and therefore I have a legal entitlement to receive reimbursement. So in that scenario, the problem is that what they really want is for the government to pick and choose among the things that are most important. And once you do that, you're creating a road map for fraud, because all you're doing, every time you omit something that might be material in any particular circumstance, but it's not specified in the list of the absolutely most critical things, you're just inviting them to say we're not complying with it. Breyer, what has it done? What has the government done when they certify things? Do they say things like, I hereby certify that I complied with all material regulations? What do they say? Well, there are some provisions that have certification requirements, but I would point out that even if you were to do that, it's not going to solve most of the problems. No, I agree. Because of grant programs. There are Federal dollars that are going to third parties in which people are engaging in contracts with third parties and they are being paid by the Federal government. And in those kinds of situations, even your kind of basic certification isn't going to work. So the problem here, Mr. Chief Justice, fundamentally, is one where the two elements of materiality and knowledge are going to solve the vast bulk of the problems. Because if the claimant is acting negligently or at a lower standard, simply just missed it, that's not going to be a case that will be actionable under the False Claims Act. And furthermore, if the claimant is asking for something that the government doesn't deem to be material in which the test would be can the government withhold payment, then that isn't going to be actionable under the False Claims Act either. And notably, the other side has a lot of amicus briefs, but they don't really point to any specific cases. And if you look at Professor Engstrom's amicus brief, he is the leading scholar on what has happened with the False Claims Act empirically. He has studied all 6,000 filings since 1986, and he's charted what they have — what's happened to them. And his conclusion is that not only has there been no spike as a result of the implied certification theory having been adopted, but that, in fact, the problems that are identified don't actually come to pass because the vast bulk of the cases that are not intervened in by the government, in fact, are done at a motion to dismiss. And so I would submit to you that if you looked at the actual data for the False Claims Act, a lot of what you would conclude on the basis of the other side is hyperbole. There is a lot of fear, but it comes down to two points. One is they would like to have notice so that presumably they don't have to comply with the things that the government doesn't more specifically reticulate in its rules, and they want to be able to know if they want to get around that, what are the key things that they have to get around. I would submit to you that in the Civil War, as Justice Kagan's hypotheticals pointed out, there was a problem of implied certification because contractors were selling boots that were made out of cardboard, not leather, and guns that didn't shoot, and mules that were not live and whole mules. And that is exactly the same kind of problem that we're talking about now over 150 years later with respect to mental health services that are not being provided by licensed and supervised professionals. Thank you. Roberts Thank you, counsel. Mr. Stewart. Stewart. Stewart. Mr. Chief Justice, and may it please the Court, the statute refers to false or fraudulent claims, and I think there are two different but complementary analytic routes that the Court could take to conclude that if the facts alleged in Respondent's complaint are true, false or fraudulent claims were submitted. One way to look at this is to focus on the fact that in Medicaid, as in other government entitlement programs, a person who submits a claim is not simply asking for money. He's representing that he has a legal entitlement to be paid. And you can say, if a person asserts that he is legally entitled to be paid and he knows that he has no such legal entitlement, the claim is false. And then you would ask, under what circumstances would a person know that he had no legal entitlement to be paid? And the answer would be, if the person knows that he has failed to comply with a material term of the contract or a material regulatory requirement, by definition, the government will have no obligation to pay and the claim of legal entitlement will be false. And I think, Justice Breyer, you are exactly right in pointing to the law of contracts, which draws a distinction between material and nonmaterial terms. And the purpose of that distinction is to identify the situation in which a breach by one party will excuse the counterparty's failure to perform. And so a breach — if the government is obligated to pay money and the contractor makes certain corresponding performances, if a nonmaterial term is breached, the government's obligation to pay remains intact. And so a person who knew himself to be in breach of a nonmaterial term and requested payment anyway wouldn't be making a false claim. He would be claiming a legal entitlement to be paid. He would be entitled to be paid because the breach wouldn't excuse the government's payment obligation. But if the term that was being breached was material, the claim of legal entitlement would be false. The other analytic route that you could take to get to the same result in this case really follows up on Justice Kagan's hypothetical about the situation in which there is a contract for services to be performed by a doctor, and the person who has arranged for services to be provided by someone else comes in and says, services have been performed, pay me. And it seems like clear fraud under 529 and 551 under the restatement. You have made a representation, services have been performed. Explaining that they were performed by a non-doctor under the circumstances is essential to make that representation non-misleading. And what we have here, at least if the facts are as alleged, is basically the same thing. The complaint recites that in requesting payment, Universal Health Services submitted various invoices, and they used billing codes, five-digit numbers that were determined by — identified by MassHealth as the codes you use for particular types of services. One of them corresponded to individual therapy, one to group therapy, one to family therapy. Now, obviously, the claims would have been false if no services had been provided at all, and I assume everyone would agree that if MassHealth — I'm sorry, if Universal Health Services had billed for services provided in a group setting, but had used the code that MassHealth had identified for individual therapy, that would have been a false claim, because MassHealth is entitled to treat the use of that code as a representation that the services were — were performed individually. And really, it's no — it's not a large leap to say when you use the code for individual therapy, you are representing by that the services were performed, the treatment was performed by a person who was legally authorized to provide mental health therapy under Massachusetts law. Now, unlike the contract hypothetical that Justice Kagan identified, in determining what implicit representations are being made, we wouldn't look to the previous promise that the person had made, because there's no contract. We would look at the MassHealth regs that identify who — what kind of credentials do you have to have to perform particular types of mental health services. And when — Roberts' How do you tell, Mr. Stewart, because at least under Mr. Frederick's view, you have to have knowledge that the government wouldn't pay. I assume the government wouldn't pay even for nonmaterial provisions. I mean, if you're supposed to pay, you know, for $100,000, you're going to provide these services, and you don't provide a small service, you'd still pay, but you wouldn't pay for that. I mean, I don't understand that, how some things are material — does it go to pay at all or carve out a particular provision? When is the government — when is there going to be not performance of a contract and the government is going to pay for that anyway? Stewart. Well, I think if we got a bill for particular services and the services had been essentially performed as they were expected to be, the government's policy objectives were adequately advanced, but some technical requirement had not been complied with, that if it's a nonmaterial term, then by definition it wouldn't excuse the government's duty to perform. Okay. So the contract is to provide all these health services, and by the way, you've got to buy, you know, staplers made in the United States, not abroad. And they do everything, but they don't buy staplers made in the United States. I would say the government, if they're, you know, rigorous contracting officers, would say, okay, you get, you know, the 999,000, whatever, but we're going to penalize you because you didn't use staplers. We put that in there for a reason. You didn't do it, so we're going to withhold $100, right? Well, we would certainly agree that in government contracting it's sometimes the case that the government's trying to serve ancillary policy objectives such as Buy America, et cetera. And so if under the terms of the agreement and the law of contracts, the government would be legally entitled to withhold payment or a portion of the payment in that circumstance, then that would be a false claim. Roberts, that would be a false claim, and they could bring a relator, can sue for that. Then I don't understand the difference between material and immaterial. Well, if it was the case, I mean, it may be that you, that your more expansive conception of material terms is correct and that there would be some circumstances that I hadn't envisioned in which the government could lawfully withhold payment, even though the violation seemed fairly tangential to the claim. If that's the case, all it means is that the person's ---- Sotomayor, I'm sorry. All it means is ---- All it means is that there would be more expansive False Claims Act liability, but not because we would be punishing people who didn't cheat the government. If knowledge of the particular breach at issue could have led responsible government contracting officers to withhold payment, wholly or in part, and the person knows that he is in breach, he should be making a breach. The wholly or in part, I just copied out of the Horn book, the basic difference between a material breach and a partial or nonmaterial breach of contract. A material breach of contract is a contract, a breach that allows one party to repudiate the contract. A nonmaterial breach is a breach that gives rise to damages, but cannot serve as the basis for repudiation. Now, until this last interchange, I thought that was the distinction you were drawing, that if the piece of paper says nothing but pay me and there is a violation of a reg, if the violation of that reg is such to be material, meaning it would never be a basis for repudiation, then it is an implied statement it was complied with and it's fraud. But if it's just Staples, you may have to pay damage for Staples, but that certainly doesn't to say the contrary there would make the contractor responsible for having complied with every one of 40,000 regulations, size of the room, size of the table. Well, I mean, first, there is a distinction between situations in which one contracting party could sue for damages and situations in which one contracting party could refuse to perform its own obligations under the contract, including payment. But I think the second thing is that the Sienta requirement really is crucial here. It applies both to knowledge of the breach and knowledge that it is material to the government. The only other thing I wanted to clarify in response to your question is we would say the test is whether the person knew that the government could lawfully withhold payment, not necessarily. Hold payment, but not repudiate the contract. Withhold payment on the particular claim, because there would certainly be plenty of situations in which if somebody billed for services that were not reimbursable  If they put the wrong billing code down, you know, you shouldn't have to pay them. But I don't know if that means you can say, okay, you're fired as our Medicare provider in the State of Massachusetts, which is what I understand materiality in the contract concept to be. But what you're saying is it's a false claim if it's and, you know, you said you were providing x-rays and you didn't. Okay. But and that's material, I would think, in the sense that you have to pay for it. You shouldn't pay them for it. But I don't know if it's material in the sense that you can get out of the whole contract. I mean, I would say material in the sense of allowing the government to decline to comply with its corresponding obligation to pay for that particular shipment or those particular services, because we certainly, as you say, have to pay them. Sotomayor But that doesn't answer the question. There's a miscoding that's intentional and knowing, and there's a miscoding that's negligent. Exactly. Sotomayor So if it's a mistake, you could withhold payment, but you can't sue under the False Claims Act, correct? Exactly. And there is a mental state that the FCA contemplates between negligence and actual knowledge, because it defines the term knowingly to include recklessness. And Mr. Stewart, I'm sorry. Could you just what are immaterial terms for the government? I mean, give me some examples. What would count as not material? I mean, I don't know if there are any terms that are wholly immaterial, because if there were, presumably they wouldn't be in the agreement or the regulations, but there are certainly terms that would be immaterial to particular claims. So, for example, if the government had a rule that said at all times a hospital that is receiving Medicaid reimbursement has to have the following equipment in its operating room, it might well be the case that a violation of that requirement would disentitle the claimant to payment for medical or surgical services performed, but would not disentitle the claimant to payment for services that had nothing to do with use of the operating room. And so to follow up on what I was saying before, I think what we have here is really a fairly close variant on the hypothetical that you floated, the case in which they represent that they performed individual therapy. They don't say that the person who performed it was not legally authorized to render billable services under the MassHealth program. That would seem to be a classic case of implied misrepresentation, fraudulent omission, et cetera. Kagan. Kagan. Kagan. Kagan. When you started and you said that there are two ways in which this could be argued, do you have a preference as to which one of those two ways makes most sense or are there cases where they diverge and we should be aware of that? I think probably the one that would be most helpful to the government is the first one, that if you assert a claim of legal entitlement to be paid and you know that you are not legally entitled to be paid or are reckless as to that fact, the claim is false and it's knowingly false. That would be the one that's most helpful to the government, just because there are so — there are such variations in the nature of the documentation that is provided by claimants under various government programs. That general rule would be of the greatest help. The second I offer, really because in a sense it's an easier way to decide this case, if the government was not — I mean, I'm sorry, if the Court was not ready yet to decide whether the broader proposition was correct, it could still say in this case there was not simply a claim for a particular dollar amount, there was at least a little bit of detail as to what were the nature of the services to be performed, and giving that detail without giving the offsetting fact, if it is a fact, that the services were performed by noncredentialed, unsupervised people would render the statement that was made misleading. The last two things, if I could just say them very briefly, Mr. Englert referred to the newness of implied certification, that the term implied certification is new. I don't believe it was used until the last 25 years or so. But the concept that a person can be held liable for fraud even though he says nothing explicitly false but labors to create a false impression, that's been around for ages. The second thing is Mr. Englert said that the current FCA adopts a watered-down version of the materiality requirement. I think if you compare the current statutory definition to this Court's formulation of the traditional materiality standard in Nader, in Gaudin, in Cungus, the current statutory definition is drawn essentially verbatim from this Court's description of what materiality had traditionally been at common law. Roberts. Roberts. Both the United States and Massachusetts did not intervene in this case, is that right? That's correct. Why is that? We don't — I don't know the answer, and we don't typically give public explanations of why we don't intervene. Sometimes it's because the dollar amount is small. Sometimes it's because the — we think that the relator is capable of handling the case himself or the relator's counsel. Sometimes we do decline to intervene because we're skeptical of the merits of a case. But even in those situations, it could be that we agree with the relator's theory and simply don't know whether the facts could be proved. It comes in all variations. Our amicus brief is obviously the best evidence of what we believe the correct legal rule to be. The only other thing I would say is that our decisions about whether to intervene in particular cases would be skewed if we believed that courts would draw from our failure to intervene an adverse inference as to our views on the legal theory. If we felt that we would be made to seem skeptical of the implied certification by not intervening, we'd feel pressured to do it. Thank you, counsel. Eight minutes, Mr. Englert. Thank you, Mr. Chief Justice. The False Claims Act uses words drawn from the common law of torts, not words drawn from the common law of contracts. This is Henry Steiner and Duncan Kennedy, not Charles Freed. The test, as stated by my friends on the other side, is the core test is whether the State could reject the claim for reimbursement. That is a contract standard. That is not a tort standard. And if this Court accepts that version of the implied certification theory, it will be much broader than anything the lower courts have ever done. And the Parade of Horribles and the light green amicus briefs, which cite many horrible cases, Mr. Frederick says they cite none. They cite many real-world horrible cases. That will be the tip of the iceberg if this Court accepts their theory. It has been suggested that everyone knows that it's common sense and that it's obvious that people who provide counseling services to teenagers must be licensed. Well, apparently the Commonwealth of Massachusetts doesn't find it obvious. Section 429.424e1, quoted on page 8 of our opening brief, states the standards in which, quote, "'counselors and unlicensed staff' may provide counseling services." If it's so obvious, why did the First Circuit have to rely on a regulation that applies only to satellite facilities? When the First Circuit found a regulation that no one had cited in all of this litigation, it didn't cite one that applies to every facility. It cited one that applies only to satellite facilities. And yet we're told it's so obvious that my clients should have known that and that there is materiality and sanctuary in this case. Volume 2 of the Joint Appendix contains seven complaints to State agencies, four reports by State agencies, two consent decrees, and four other documents. They cite many, many, many, many regulations. This morass of regulations bluntly is worse than the Internal Revenue Code. It's full of cross-references. It's full of contradictions, as the First Circuit itself acknowledged in footnote 15. The way the First Circuit resolved the contradiction was to defer to the non-promulgating agency. So it's Chevron on steroids. These things are not obvious. These regulations are not obvious. Now, Mr. Frederick and Mr. Stewart, in particular Mr. Frederick, may seem to have scored a blow when he put said, fraudsters shouldn't get to pick and choose which regulations they comply with. Well, if you assume fraud, if you put the rabbit in the hat, you can take the rabbit out of the hat. People should pick and choose which regulations they comply with. Why? Because there are so many and so confusing. And who holds the keys to telling them which regulations to comply with? The regulating agency or the contracting agency. If the contracting agency or the regulating agency says, please focus on this regulation because it really matters, guess what? People will focus on the regulation because they know it really matters. If relators come in after the fact, not the Commonwealth of Massachusetts, not the United States, but relators come in after the fact and say this was so critical that you should have known and you acted, it was material, it was essential, and you acted with scienter, and they get trouble damages, attorney's fees, $5,500 or more, $5,500 minimum per claim civil penalties, and the opprobrium of calling someone a fraudster, that's not the system in which the regulating agency or the contracting agency or the regulators have control. That is not the administrative state we know. That is a game of gotcha, after-the-fact gotcha. Breyer, how does it differ what you just said from this thing in the restatement where you say it would be fraud, facts basic to the transaction, or matters known that he knows to prevent his statement from being misleading? The statement is, implicitly, I did the work. And this kind of problem, is it or is it not, basic to the transaction that the doctor be certified, is the kind of thing that I'd think you and other lawyers argue very well on opposite sides, as you just did. But the standard you advocate is, according to the restatement, misleading statement about a fact basic to the transaction, misleading, implicitly, I did it. Truth, I didn't. See, I'm saying your standard gives rise to the same problem, doesn't it? No. Why? Because the common law has worked through these problems, Justice Breyer. The common law of torts, not the common law of contracts. Look at illustrations 3 through 8 of the restatement. But if that doesn't do it for you, think about the dog that didn't bark in the first case. Look for common law fraud cases that state their theory. You won't find them. You won't find them. They don't exist. This is a theory made up by the plaintiff's bar in the last 22 years. And it has run amok. There's a parade of horribles in the light green amicus briefs. There's a parade of horribles in the dark green amicus briefs. Their parade of horribles is that it will be A-OK to do these things. It's not A-OK to do these things. There are calibrated remedies administered by the government for breach of contract, for violating regulations. The Massachusetts authorities had calibrated remedies in this case. Two years of suspension and a $1,000 fine. They didn't ask for any money back. They didn't ask for any money back. They didn't say, this is the kind of thing that is so basic that you should give us our money back. They said, we need some corrective measures. These are services for poor people. These are services for poor people. Sotomayor, let's not forget something. Money came from the Federal Government. Maybe a system in this cooperative program that's flawed, but Massachusetts Health has no incentive to seek the money back because they're not paying it. The people with the incentive are the Federal Government, and that's why we have the False Claims Act, because the Federal Government can't enforce all seeking of money back in these cooperative programs. Roberts. But it has to be a false or fraudulent claim, which are terms derived from the common law, construed in this Court's cases, elaborated through the common law. I have a very hard time accepting that if you provide, if you claim money for a service that you don't render, not a qualified individual, unsupervised by a qualified individual, which is a requirement specifically in the regulations, I'm having a hard time understanding how you have not committed a fraud. Your Honor, all that you knew what you were doing. All that was submitted was a request for payment. The government controls what it will require in a request for payment. There is no allegation of a false statement in the request for payment. The only allegation is that every jot and tittle of every MassHealth regulation is incorporated, as long as it's measured from their signature. I don't think that it's every provision. Well, Your Honor, with respect to the others. I think it's a very basic provision. Your Honor, with respect to the others. You say I perform this service, that you perform the service in accordance with the contract. Then in seven complaints to administrative agencies, in the operative complaint in this case, amended many times, why is not the regulation the First Circuit relied on even cited? Why is the regulation Mr. Frederick says he would have used if he had been litigating this case in the district court even cited? It proves my point, Your Honor, that this is a morass, and for one to think after the fact, this is basic and central and this is fraud, is a plaintiff's lawyer's game. Thank you. Thank you, counsel. The case is submitted.